2007-3313, Mr. O'Leary, please proceed. May it please the Court, Your Honors, I'm Cotty O'Leary, appearing pro se for a second time before this Court. Last time, the Court remanded the case to the Administrative Law Judge so that I could have a full hearing on the merits. However, the Administrative Law Judge did not let me depose or call as witnesses at the hearing key OPM employees. But you know the choice of witnesses is very much at the discretion of the trial judge, and the cases are few and far between when we would intervene in that. Yes, sir. In this situation, the only adverse witness I was ever able to call and cross-examine was an OPM scorer, Juanita Love, at the hearing held in 2003. The Administrative Law Judge admitted the depositions or testimony at hearings of two key OPM witnesses, Carol Bullock and Sherry Turpinoff. Sherry Turpinoff is the head of the Office of ALJs, and Carol Bullock was the individual responsible for developing the SQS, which was a part of the ALJ examination. And the score in that part of the examination was worth 50% of the total score. What the Administrative Judge is saying is that their hearsay testimony from another action, Henry v. OPM, is relevant in my case, but that their live testimony, where I can explore additional issues… Well, what precisely were you trying to explore? Was it on the issue of the levels not having been professionally developed? What were we exploring here? Well, first of all, the case involves 5 CFR 300-103B and 5 CFR 300-103C. With regard to 300-103C, Sherry Turpinoff had determined in her testimony that after a study of the ALJ examination was made, that she believed that OPM raters were focusing in on job titles and scoring the SQS rather than going deeply into the benchmark achievement examples. So, I mean, to me that's an admission against interest, in the interest of OPM. Wait, so that goes to the fact that non-merit factors were considered? Yes, ma'am. Now, with respect to 300-103B, Carol Bullock testified that she wrote the level point definitions. Now, in this employment practice case, this is the first time that OPM produced its benchmarks, so no one knew that the level point definitions existed except OPM heretofore. Now, when Carol Bullock testifies that she wrote the level definitions, I mean, that causes concern under 300-103B that, well, it sounds like she just wrote them personally. I don't know that we know that they were submitted to individuals so that they could be scrutinized by ALJs or psychologists and thus establish that the level definitions were professionally developed. Now, with regard to being professionally developed, I believe that it's OPM's burden to establish that their test comported with the requirements of 5 CFR 300-103. So, I think that once we know that Carol Bullock wrote the level definitions... But, can I get that? I'm having a hard time picturing because there's so much. The level definitions are just kind of a sub-subpart of this examination, right? They preceded. They're just a general description of that level. But the other stuff you concede was professionally developed. The benchmarks. Yes, ma'am. And is there anything else? So, what's the relationship between the levels and the benchmarks? Well, the level definitions precede the benchmarks. And according to the standard operating procedures manual, I think you use the level definitions to rough out what level you might be at. But both Sherry Turpinoff and Carol Bullock testified that to actually score an SQS, you have to delve deeply into the benchmark achievement examples. That's where the points are and that's the scoring key. Sherry Turpinoff indicated that you had to delve deeply into the benchmark achievement examples. Carol Bullock testified that before you could score an SQS, you had to consider the benchmark achievement examples at the level above and at the level below before you could be certain of the score you were going to award. Now, what we know from Juanita Love's testimony, who was an OPM scorer, is she didn't believe that the level definitions were part of the benchmark achievement examples. And she didn't believe that she was required to use the benchmark achievement examples to score an SQS. And indeed, she indicated that over 50% of the time, she did not refer to the benchmark achievement examples at all in scoring the SQS. Now, at the hearing that was conducted, I was able to introduce some new evidence. One piece of evidence was an actual scoring sheet by an OPM rater that indicated OHA SSA 2. In other words, we have Ms. Turpinoff testifying after a study was made of the examination that she believed that OPM raters were focusing on job types and awarding scores. And on an individual, an OHA staff attorney's actual scoring sheet, one of the raters on her scoring sheet, Lois Ellington, wrote OHA SSA Experience 2. I think that causes pause. On one of my ALJ ratings appeals panel scoring sheets, the particular ALJ wrote Social Security Decision Writer, and awarding a score of 3, which is a relatively low score. Now, for the two sections of the SQS where he wrote Social Security Decision Writer, or she wrote, I don't know the identity of the ALJ, in that particular section, I didn't refer to the fact that I was an OHA staff attorney. In other words, I featured my trial experience, rather, in those two categories. So, it would appear to me that if they're considering your job title, and I believe we know that because they wrote the job title, for a section where you didn't even mention in the SQS that you had had that job, I think that, taken into consideration with Ms. Ellington's… Excuse me. I'm sorry. The point here is whether non-merit factors were considered, and you're using the reference to the fact that you were a Social Security attorney. No, I don't think that's… As an indication that a non-merit factor was considered. The non-merit factor would be considering the title of my job, rather than my response on the SQS submission about what my experience in the field of law shows. Well, but certainly, whether you call it the title of the job or a shorthand description of the job, as long as it comports with what the job entails, is pertinent to your experience, right? I mean, if you identify, suppose you identify someone as a trial attorney with the Department of Justice in the commercial litigation branch, that would describe to someone who's familiar with that operation a lot about what that person's experience is, right? It wouldn't be wrong for them to write, you know, handles trials before the Court of Federal Claims and appeals before the Federal Circuit. You mean for the rater to write that? Right. Based upon the submission? Based upon the title of the job. Well… Knowing that that's what that job entails. Right. Well, in this case, for that, for the two items that I mentioned, where Social Security Decision Writer was mentioned, in there, I didn't indicate that I worked with the Social Security Administration. So it causes one to wonder, why would a rater rate it as Social Security Decision Writer? I mean, he could have written trial attorney or something like that, whatever I featured. Now, I think that… I mean, are you suggesting it was improper for them to allude to what your actual employment was? I mean, that was a description, right, at least, whether a decision writer or not is correct, but that was your position, wasn't it? That was correct. It wasn't wrong for them in assessing your experience to allude to the fact that that had been your employment in the immediately preceding period, right? I think it is under those two categories. I think in the categories, in other words, for each section of the SQS, you receive a rating. I think had the job title been written for the section where I indicated that that was my job, that would be less problematic, but it would still be problematic because you were only supposed to be rated… Oh, I see what you're saying. You're only supposed to be rated based upon the experience that you show in the job. So what you're saying is couldn't they use a shorthand to indicate that? Right. Well, I think in light of Ms. Turpinoff's testimony that she thought OPM raters were focusing on job types to award scores rather than delving deeply into the benchmark achievement examples, I think when you consider the AHA's writing along with Ms. Lois Ellington writing OHA SSA experience 2 and Ms. Turpinoff indicating that she thought that OPM raters were focusing on job types, when you consider all three in combination, I think we need to question what was going on. And indeed, that's why I believe that the testimony of Ms. Turpinoff and Ms. Carol Bullock was important to this case. Mr. O'Leary, you're well into your rebuttal time. You can save it or lose it. I'll save it. Thank you. Okay. Ms. Lucy Mensah. Morning. Morning. May it please the court. This court should dismiss Mr. O'Leary's appeal for lack of jurisdiction as he failed to file a timely notice of appeal to this court. Should this court, however, find that it does possess jurisdiction, this court should affirm the board's decision on the merits. With respect to the jurisdictional question, a timely notice of appeal is mandatory and jurisdictional according to Griggs. Mr. O'Leary's notice of appeal was not timely. The board's decision was issued on January 11, 2007, and as a registered e-filer, Mr. O'Leary was sent a copy of the board's decision on that date, and there's evidence in the record of that on A792. And the notice of appeal is due 60 days after the petitioner receives notice of the board's decision. The notice, according to the statute, I guess, requires receipt. Yes. Is it your claim that even if his agency's computer system were flawed and in a way that even though the notice was sent out, it never was received by anyone within his agency, that would nonetheless constitute receipt? Yes, Your Honor. I would clarify that in this case, it's not that it was not received by anyone. I understand, but I'm trying to see how broad your position is with respect to what constitutes deemed receipt. And I think I understood your position to be, and would you correct me if I'm wrong, be that receipt occurs the moment the e-mail is sent out, even if the agency computer from which that e-mail would be disseminated to the individual recipients did not process that e-mail. Not quite, because in this case, we had an electronic submission that was successfully received at the recipient e-mail address. I'm not sure if you're referring to a situation where the e-mail bounced back and was never received by any computer. The situation didn't bounce back, and so you assumed that it was received. A malfunction in the computer in the agency indicated receipt, but in fact there had been no receipt. If there had been no receipt by any computer and therefore there was not a successful electronic submission, then we would not be in the situation we're in here. Well, what do you mean by successful electronic submission? His contention is that it got delivered, in effect, to the wrong place. It didn't get delivered to him. He had set up an arrangement by which e-mail would be forwarded, and this simply didn't get forwarded. Why is that different from my hypothetical? Because the situation is that that is incumbent upon him. If the agency or his e-mail address was not working properly, that is his burden to then use other means to determine. Why wouldn't that be true of my hypothetical? Well, the difference would be that there would not have been a successful electronic submission. There was a successful electronic submission. To the agency, but not... To the e-mail address that he provided. The agency's fault. The agency computer person has fouled things up in a way that no one is getting e-mail for a period of time within the agency, but all the e-mail senders are led to believe that the e-mail submissions were complete. Surely, that wouldn't constitute receipt by the individuals. Would you say? Well, I would say that it would because of the fact that Mr. O'Leary is the one who chose to use this e-mail address to register as an e-filer, and the way the system is set up, it does not account for what may happen once the delivery is successfully made to your e-mail address. The point of the e-filing system is to increase efficiency, and therefore a successful electronic submission by the board to the e-mail address you provide is what generates the deemed notice of receipt. And therefore, because Mr. O'Leary's notice of appeal was not filed within 60 days after the January 11th submission of the board decision, then his notice of appeal is untimely. Mr. O'Leary makes various arguments regarding why the deadline should be told essentially, but this deadline is not subject to equitable tolling under the OHA case. And it's clear from the regulation that applied at the time that board documents served electronically on registered e-filers. Tell us about the merits. Okay. With respect to the merits, this Court should reject Mr. O'Leary's claims that he did not receive due process from the administrative judge. Mr. O'Leary was provided an opportunity to explain to the administrative judge the purpose of the depositions and hearing testimony that he sought. He failed to do so and cannot now challenge the administrative judge's procedural determinations, excuse me, on the basis of arguments he failed to make to the administrative judge. I would turn the Court's attention to the specific submissions that Mr. O'Leary made with respect to the witnesses, which is different from the claims he is making now. If we look, for instance, at what Mr. O'Leary said with respect to Ms. Bullock and his request for a deposition of Ms. Bullock, he describes who she is and then he says her... Where are you? Where is that? Excuse me. I'm at A223. He states that he believes her prior testimony contains admissions against the interests of OPM, and he states that her information directly contradicts the hearing testimony of Ms. Juanita Love. With respect to seeking her as a witness at the hearing at A218, he states, quote, she will explain OPM's SQS scoring procedure. She will be called as an adverse expert witness under cross-examination. And on this basis, this is not sufficient basis upon which to... for him to make the claims that he's now making about what he would have called Ms. Bullock to testify to. It's clear that he appeared at the time to simply want her to repeat testimony he believed supported his case, and that testimony was already in the record. It had already been admitted. But isn't there a difference? Part of your argument for why his due process rights weren't violated, where the testimony was already in the record, but he hasn't had an opportunity to cross-examine those witnesses. So if you concede there's some relevance in what these witnesses had to say, how can you legitimately deny him? On what grounds? It's relevant. You know it's relevant because it's already in the record. How do you know if it's cumulative? How could it necessarily be cumulative if he didn't have a chance to cross-examine? Well, the administrative judge in making the procedural determination had to rely on what Mr. O'Leary himself said about the witnesses. And he did not indicate what value, if any, would be provided by cross-examination. And therefore, on that basis, the administrative judge properly used the judge's discretion in excluding these depositions and this witness testimony. The same is true with the testimony of Ms. Turpinoff. It appears that Mr. O'Leary would perhaps ask Ms. Turpinoff additional questions about this issue, about whether scores focused on job types. Again, I turn to A222, where Mr. O'Leary describes what he would have sought in a deposition. He says, quote, she will be able to give an explanation of what facts led her to arrive at that conclusion and why her conclusion is supported by preponderance of the evidence. Similarly, on A218, he states that Ms. Turpinoff is, quote, in a far superior position to explain OPM's policies during the period in question than is Ms. Juanita Love. And on this basis, he does not show that any new relevant evidence would be obtained from Ms. Turpinoff. And therefore, the administrative judge properly exercised the judge's discretion in excluding this testimony. Well, it's relevant, right? The question about whether or not there was a practice of bias against OHA attorneys based upon their job titles. No, well, it's focusing on job types. Yeah, there's a practice of focusing on job types rather than applying the benchmarks. Job titles, yes. So that's relevant. So we're – but the answer is he hasn't demonstrated that Ms. Turpinoff is going to say something more than she said in the previous case? Is that what the basis for not allowing her to be deposed? That is it in part. And Mr. O'Leary just did not demonstrate what additional information he would be seeking from Ms. Turpinoff and what he would obtain that would support his case at all. It appears that he believes that she found that scores improperly focused on job types, and that evidence is in the record. So it's unclear what additional evidence – and he certainly did not make it clear to the administrative judge what would be obtained and what would be useful at the hearing. Well, that's a problem, isn't it? I mean, isn't there a problem if there's a focusing on job types rather than applying the benchmarks? If there was, I think that the term job types is a little bit ambiguous because it's unclear whether job types can refer to a shorthand way of describing what someone does in a job or simply the job title without any consideration of the underlying work. However, if it was true that the raters solely relied upon job titles in making their decisions, that would be improper. That's actually not even what – Why is that not relevant to this case? Well, that first – Why was that rejected on – I mean, so you're acknowledging that there's some – there might be some ambiguity in the testimony she'd given thus far, but you concede that that testimony was relevant. So how do we know it would have been cumulative if you're conceding that there's some ambiguity and that if you read it certain ways, she might have something very relevant to say? Let me clarify the point that I made about the ambiguity. I just sort of meant in how we discuss the term job types and job titles. If we turn to her actual testimony, which is at A112. A112? 112, yes. She states – this is her testimony in the Henry matter. She is talking in general terms about the SQS examination, and she talks about things that she believes happen when raters are not scored. As you can see from the testimony there beginning at line seven, she does not speak specifically that scores were focusing on job titles improperly. What she says is that when scores are not trained, things tend to develop over time that shouldn't. They develop keywords or job types that they tend to key in on and use those guides more than going deeply into the benchmark accomplishments. And I think my personal opinion purely is that's some of what we were seeing. I think some bad rating habits had developed. So potentially this could be problematic. I do not believe so, and Mr. O'Leary certainly did not indicate what he would gain from the testimony of Ms. Turpinoff on this point. Well, but isn't that obvious? I mean, you sort of talked it too. If it's improper to use just job titles, or if that raises some question about the propriety, then the question would be what does she mean by this, and does this mean that they use job titles, and that's what they tend to use at the expense of the benchmark accomplishments. But given that that's not what she says, and given that there is substantial evidence in the record that raters were specifically instructed not to use job titles, then, again, I would submit that he's not indicated what additional testimony that he would seek from her, and if he wanted additional testimony on this precise point, that would be cumulative. Furthermore, given the substantial... It would be cumulative. What if he said just what I had just said, that there's some ambiguity in terms of what she said, but I think it's quite conceivable that what she meant, at least one fair interpretation of what she meant, is that they were using job titles. And I think that's very relevant because that would be a violation of the regulations at issue. If he had said that, would that be sufficient? That would be sufficient. That would be very different from what he actually said to the administrative judge. And, unfortunately, he cannot make new arguments here that he did not make to the administrative judge about what the purpose of the testimony was and what he sought to gain from that testimony. The same is true with the testimony of Ms. Ellington and the unknown ALJ. With respect to Ms. Ellington, at A218, Mr. O'Leary simply states, she was an OPM-SQS raider during the period under consideration, which is a not sufficient basis to believe that she would have any relevant information to add to the hearing. Similarly, with respect to the ALJ, at A219, Mr. O'Leary simply says, quote, if appellant is not permitted to cross-examine the above-mentioned ALJ, appellant hereby takes written exception to any adverse ruling made in that regard. And given that, for the most part, Mr. O'Leary sought to rely on prior testimony of the various witnesses and rather than to dispute it or add anything new into the record, the administrative judge's decision should stand on these points. With respect to Ms. Bullock, I just wanted to clarify one point that was made by Mr. O'Leary. He stated that we do not know whether or not the level definitions were validated, and I believe that he believes that that would be one basis of testimony for Ms. Bullock. This moves us into the second portion of the merits part of his claim, whether or not the level definitions were professionally developed and whether the scoring was impermissibly based upon job types. There is substantial evidence in the record on both points. I would explain that the way the level definitions worked is, for each element, you can rate somebody from a 1 to a 5, and for 2, 3, 4, and 5, there's a level definition explaining what type of experience would give someone a score of 2 or 3 or 4 or 5, and then there are specific examples from other applicants. At A202 in the record, Ms. Bullock specifically testified that she developed the level definitions based upon a professional job analysis. I see that my time is finished. Should I complete this? Thank you very much. You were going to complete that point? Yeah, I can just quickly wrap up. There is substantial evidence that we pointed to in our briefing that the level definitions were professionally developed by Ms. Bullock and submitted to validation by OPM psychologists, and there is substantial evidence in the record that the scoring was not impermissibly based upon job titles, and raters were specifically instructed not to consider job titles. Thank you, Counsel. The case will be taken under submission. Your Honor, if I could just briefly pick up on 3103B. The Merit Systems Protection Board did not want to consider the issue of whether the level definitions should be considered separate and apart from the benchmark achievement examples, but I think we have to because, based on Juanita Love's testimony, she didn't even refer to the benchmarks, and on behalf of her scoring, she just used the level definitions. Carol Bullock testified that she wrote the level definitions. I don't think that there is evidence in the record that substantiates that when she wrote the level definitions that they were subjected to psychologists. Two examples that the Merit Systems Protection Board gave were, one, John Flannery's testimony where he was talking about a self-rating portion which was never used by OPM. The second one was a letter written from OPM to Bruce Wecker, an OHA staff attorney. Just a quick question. Is there some case or something in the regulations that requires that professional, whatever we're talking about, include or consist of a psychologist? No, it just has to be professionally developed. Right. And is there any definition or given to what that means? I mean, why not attorneys instead or administrative judges as opposed to psychologists? Well, in the field of industrial, it's generally considered the testing in the field of industrial psychology, and generally you would have psychologist or administrative law judge since it is a test to determine your qualifications to become an administrative law judge. Generally, they use psychologist and are administrative law judges. I would want to point out under 300.103C, I've argued that the benchmarks contain a bias that they refer to the exact job title, OHA staff attorney, showing a score of 3, and to me they should contain something indicating that if you have trial experience and OHA experience, there would be a situation where you could be rated higher than 3. Well, is there any indication here that someone who had had OHA and had, let's say, been a trial attorney for 20 years would have been rated 3 simply because that person was either in that current occupation or at some point an OHA attorney? I didn't understand that to be, there to be any indication that that was something. The entire array of one's work experience would be open for consideration, right? Presumably. It's just that, you know, I just felt that it could have been redacted to a government attorney working for a benefits agency rather than naming the exact job title. Thank you. Thank you, Mr. O'Leary. Case will now be taken under submission.